UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SARAH WOLFE,<br><br>    Plaintiff,<br><br>v.<br><br>IDAHO DEPARTMENT OF HEALTH AND WELFARE; CANYON COUNTY; MONTE HENDERSON, in his individual and official capacities; MCKENNA LOWRY, in her individual and official capacities; TINA GRIFFIN, in her individual and official capacities, BENITA MILLER, in her individual and official capacities as Trial Court Administrator; JANE OR JOHN DOES 1-5, unknown Canyon County Employees acting under color of law,<br><br>    Defendants. | Case No. 1:25-cv-00697-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court are two Motions to Dismiss. Dkts. 10, 11. The first, filed by Canyon County, alleges Plaintiff Sarah Wolfe has failed to allege any substantive claims against it or its agents, officers, and employees. *See generally* Dkt. 10. The second, filed by the Idaho Department of Health and Welfare and its officers (collectively "IDHW"), argues Wolfe's claims are barred under *Ex parte Young*, they are entitled to immunity, and the Amended Complaint otherwise fails to state a claim. *See generally* Dkt. 11.

Upon review, and for the reasons set forth below, the Court GRANTS both

Motions.[1] It will, however, allow Wolfe an opportunity to amend her Complaint.

## II. BACKGROUND

On December 15, 2025, Wolfe filed a Complaint alleging civil rights violations against the State of Idaho, the Department of Health and Welfare, and other "local actors" for violations of her constitutional rights "resulting from the unlawful and coercive removal of her minor children." Dkt. 1.

On or about November 1, 2024, Wolfe's children's father filed a petition for an emergency protection order. An investigation ensued and, according to Wolfe, the children's father presented the state court with false and misleading allegations which resulted in the issuance of a civil protection order against her. Wolfe alleges Canyon County and the IDHW utilized "coercive" measures to obtain her signature on a Safety Plan and otherwise colluded to strip her of her rights. Her children were subsequently removed from her custody. Wolfe couched these allegations as four counts under 42 U.S.C. § 1983 and one under *Monell.* All claims were filed against all Defendants.

On January 6, 2026, Canyon County filed a Motion for a More Definitive Statement (Dkt. 4) and IDHW filed a Motion to Dismiss (Dkt. 5). On January 21, 2026, before the Court could rule upon either Motion, Wolfe filed an Amended Complaint. Dkt. 6. Considering Wolfe's filing, the Court mooted the prior motions. Dkt. 8.

Wolfe's Amended Complaint is substantially similar to her original Complaint. She added some defendants and facts, a fifth § 1983 claim, and made some organizational

---

[1] The Court finds the facts and legal arguments are adequately presented and will decide the Motion on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

changes. Otherwise, however, her Amended Complaint remains the same as before. Again, all claims are levied against all Defendants.

Because of the similarities between the original Complaint and the Amended Complaint, IDHW essentially re-filed its Motion to Dismiss (Dkt. 11) and Canyon County filed a Motion to Dismiss (Dkt. 10). Wolfe's responses to the two Motions to Dismiss were due on or before March 3 and 4, 2026, respectively.

On March 7, 2026, Wolfe filed a Response to IDHW's Motion to Dismiss (Dkt. 13) and a Motion for Extension (Dkt. 14). Attached to Wolfe's Response was another Motion for Extension (Dkt. 13-1). The Court inadvertently overlooked the first Motion for Extension and in a subsequent docket entry granting the second Motion for Extension indicated Wolfe needed to file another such motion. Dkt. 15. Nevertheless, the Court granted the Motion for Extension setting a new date of March 17, 2026, for Wolfe's brief. *Id*. The Court also admonished Wolfe's counsel to be more diligent in seeking extensions and to ensure her filings were in compliance with all local rules—which they had not been up to that point. *Id*.

March 17, 2026, came and went without any filing from Wolfe. Both Defendants filed reply briefs a week later. The reason *both* Canyon County and IDHW replied was because Wolfe's response (Dkt. 13) seemed to "blend, combine, and confuse" the arguments presented in both Motions to Dismiss. Dkt. 16, at 3. Wolfe never referenced a particular docket or specific Defendant (Canyon County or IDHW)—instead simply saying "Defendant." This created confusion as to which Motion she was responding to.

After these two responses, Wolfe filed a belated reply brief (Dkt. 18) and another

MEMORANDUM DECISION AND ORDER - 3

Motion for Extension (Dkt. 19). This brief listed Canyon County in the caption. Dkt. 18, at 1. The Court then entered another order granting the Motion for Extension, accepting Wolfe's filing, correcting its prior misunderstanding about the *other* Motion for Extension, and allowing Canyon County a final opportunity to respond—now that it was clearer which response correlated to which Defendant. Dkt. 20.

Canyon County filed a notice of its intent to rest on its prior brief. Dkt. 21.

The matters are ripe for review.

### III. LEGAL STANDARDS

#### A. Rule 12(b)(1)

When subject matter jurisdiction is challenged pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of persuasion. *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). A party who brings a Rule 12(b)(1) challenge may do so by referring to the face of the pleadings or by presenting extrinsic evidence. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual . . . .").

If the jurisdictional attack is facial, the challenger asserts the allegations contained in a complaint are insufficient on their face to establish federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When considering this type of jurisdictional attack, a court must consider the allegations of the complaint to be true and construe them in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1988).

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Meyer*, 373 F.3d at 1039. In resolving a factual attack on jurisdiction, the court need not presume the truthfulness of the plaintiff's allegations, and may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Id.*

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation modified).

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007). "This is not an onerous burden." *Johnson*, 534 F.3d at 1121. A complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. The complaint must also contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570.

In considering a Rule 12(b)(6) motion, the Court must view the complaint in the light most favorable to the claimant and "accept[] all well-pleaded factual allegations as true, as well as any reasonable inference drawn from them." *Johnson*, 534 F.3d at 1122.

MEMORANDUM DECISION AND ORDER - 5

## IV. DISCUSSION

As noted, the Court has been confused by Plaintiff's filings—in form, substance, and timing. It appears Defendants have also been confused. At this point, however, the Court will accept the existing filings, excuse any tardiness, and consider the arguments raised in the respective briefs. The Court will not belabor the confusion issue other than to provide three points of advice.

First, Plaintiffs' counsel should familiarize herself with the District of Idaho's civil rules. The rules outline the timing and formatting of briefs as well as the other mechanics of motion practice in the District. They are not the same as the State of Idaho's civil rules. It is counsel's professional responsibility to comply.

Second, when the Court expresses confusion, or suggests a certain motion be filed, counsel should try to remedy the confusion as quickly (and clearly) as possible.

Third, the Court cannot say for certain, but it appears Wolfe's briefs (and Complaint and Amended Complaint) were written by, or with the assistance of, artificial intelligence programs.[2] The Court is not opposed to attorneys using AI programs as an organizational tool. But practitioners still have an obligation to ensure everything contained in the brief is accurate and, at the very least, should format the document in a traditionally readable format (and, again, consistent with all local rules).

With that, the Court moves to the substance of the Defendants' Motions to Dismiss.

---

[2] To be sure, none of the cases in Wolfe's brief are hallucinated—a hallmark of AI tools in legal briefs. But the general formatting and structure lend credence to the Court's supposition that AI was used.

MEMORANDUM DECISION AND ORDER - 6

**A. Canyon County's Motion to Dismiss (Dkt. 10)**

Canyon County's primary objection to Wolfe's Amended Complaint is the lack of substantive facts tying it or any of its officers, employees, or agents to any of the alleged unconstitutional conduct. The Court must agree.

In the Amended Complaint, Canyon County is identified as a political subdivision of the State of Idaho and is alleged to be "responsible for the operation, training, and supervision of its employees, including the Canyon County Sheriff's Office, the Canyon County Prosecutors Office, and the Canyon County Court Administration." Dkt. 6, at 2. However, Wolfe does not identify any specific person from Canyon County Sheriff's Office, any employee of Canyon County Prosecutors Office, or any employee of the Court Administration Office who took any action adverse to her.

First, vague references to "law enforcement" will not suffice, even at the pleading stage. Not only do multiple law enforcement agencies operate in Canyon County—including some not under Canyon County's authority—but there are no factual allegations tied to these unknown actors; just conclusory labels related to law enforcement duties.

Second, any references to the state court, court employees, the trial court administrator (and others similar situated) cannot be tied to Canyon County. Courts are an extension of the state of Idaho. And while some court employees are employed by the County, others are not. Therefore, the State of Idaho would be the proper defendant, not Canyon County, for any state-related employees. And substantively, Wolfe cannot sue the Idaho Courts, its judges, and clerks along with Canyon County employees and IDHW in a suit simply because she is dissatisfied with underlying court decisions. *See Exxon Mobil*

MEMORANDUM DECISION AND ORDER - 7

*Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). If Wolfe did not like the temporary restraining order, there exists a judicial process to challenge those actions and findings—appeal.

Third, what minimal facts are alleged in the *Monell* cause of action fail to identify any connection between anyone at Canyon County and what transpired in Wolfe's custody/protection dispute with her children's father. Wolfe laments her own negative experience within those proceedings, but that is not sufficient to support the idea that there are any unconstitutional policies, customs, or practices in Canyon County.

In short, all of Wolfe's causes of action against Canyon County rest on the false belief that Canyon County, its agents, court staff, or employees were involved in the custody proceedings in a meaningful or systematical way when, in fact, the County and its employees were involved simply because that was the county in which Wolfe lived when this custody dispute started. Without more, Wolfe has not pleaded any causes of action against Canyon County.

Canyon County asks the Court to dismiss Wolfe's Amended Complaint with prejudice. Dkt. 10, at 12. Citing the fact that it has already filed a Motion for More Definite Statement, Canyon County alleges Wolfe has had a fair opportunity to plead her claims and should not be given another chance. The Court understands Canyon County's position but because Wolfe could *arguably* save her claims with additional facts, it will give her a final opportunity to amend (if she so desires).

Canyon County's Motion to Dismiss (Dkt. 10) is GRANTED.

MEMORANDUM DECISION AND ORDER - 8

**B. IDHW's Motion to Dismiss (Dkt. 11)**

IDHW first argues it is entitled to Eleventh Amendment sovereign immunity. Second and relatedly, it asserts *Ex parte Young* (which provides a limited exception to Eleventh Amendment immunity) does not apply. Third, IDHW contends its individual officers are entitled to qualified immunity. Fourth, IDHW alleges Wolfe's Amended Complaint is an impermissible "shotgun pleading" and fails to state a claim for relief. Fifth and finally, IDWH asserts principles of abstention preclude the Court from reviewing Wolfe's challenges to the state proceedings. The Court agrees on all fronts.

*1. Eleventh Amendment*

The doctrine of sovereign immunity under the Eleventh Amendment provides that a private individual may not sue a state in federal court unless the state consents in unequivocal terms or Congress unequivocally expresses its intent to abrogate the immunity under a valid exercise of power. *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). The Eleventh Amendment bars suits against the State or its agencies for all types of relief, absent unequivocal consent by the state. *Pennhurst v. Halderman*, 465 U.S. 89, 100 (1984). This jurisdictional bar extends to state instrumentalities and agencies. *See Papasan v. Allain*, 478 U.S. 265, 276 (1986). Eleventh Amendment immunity also shields state officials from official capacity suits. *Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 616 F.3d 963, 967 (9th Cir. 2010). Where Eleventh Amendment immunity applies and has not been waived, the court lacks jurisdiction "regardless of the nature of the relief sought." *Id*.

IDHW has not consented to be sued in federal court, and Congress has not abrogated

MEMORANDUM DECISION AND ORDER - 9

their immunity to allow this suit. *See Richardson v. Idaho Dep't of Health & Welfare*, 2012 WL 667874, at *1 (D. Idaho Feb. 10, 2012) ("[T]he state of Idaho has not waived sovereign immunity for state or federal constitutional violations. Thus, Plaintiffs' constitutional claims against the Department [of Health and Welfare] are barred.") (citation modified). Therefore, all claims against IDHW must be dismissed (including Count VI, the *Monell* claim), as well as the monetary damage claims against the official capacity IDHW employees.

### 2. *Ex parte Young*

An exception to the Eleventh Amendment exists under *Ex parte Young* wherein a private citizen can sue a state officer for upholding an unconstitutional law, so long as there is "some connection" between the named state officer and enforcement of the challenged state law. *See Los Angeles County Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir.1992). "This connection must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Id*.

The *Ex parte Young* exception allows official capacity suits against state employees only for "prospective injunctive relief to prevent a continuing violation of federal law." *Green v. Mansour*, 474 U.S. 64, 68 (1985). However, the narrow exception does not permit courts to grant declaratory or injunctive relief relating "solely to past violations of federal law." *Id*. at 67; *see also Papasan*, 478 U.S. at 278 ("Relief that in essence serves to compensate a party injured in the past by an action of a state official" is barred because it does not fit within *Ex parte Young* exception). Therefore, the *Ex parte Young* exception

MEMORANDUM DECISION AND ORDER - 10

does not permit a federal court to identify a past harm and issue a remedy based on that harm.

To begin, Wolfe seeks an injunction "restraining Canyon County and IDHW from enforcing or participating in removals without judicial authorization or due process" and a declaratory judgment finding IDHW violated her constitutional rights. Dkt. 6, at 6. She does not seek injunctive relief against the officially named IDHW employees. Because Wolfe's claims against IDHW are barred under the Eleventh Amendment, *see infra*, and she is not seeking relief from any individual defendants, her requests for injunctive relief cannot qualify as an *Ex parte Young* action.

Additionally, the *Ex parte Young* exception does not apply here because Wolfe's requested relief seeks to remedy past alleged wrongs. She does not allege a current or future risk of harm or an ongoing violation of her rights. Accordingly, the *Ex Parte Young* exception to sovereign immunity does not apply.

### 3. Qualified Immunity

IDHW next claims the individual employee Defendants—Monte Henderson, Makenna Lowry, and Tina Griffin—sued in their individual and official capacities are entitled to qualified immunity. This is correct.

Qualified immunity shields federal and state officials from personal liability unless a plaintiff shows: (1) the official violated a statutory or constitutional right, and (2) the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd* 563 U.S. 731, 735 (2011) (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). For a right to be clearly established, "a reasonable official would understand that what he is doing

MEMORANDUM DECISION AND ORDER - 11

violates that right." *Anderson v. Creighton* 483 U.S. 635, 640 (1987).

Wolfe has not satisfied either prong.

First, Wolfe has not alleged facts, even when taken as true, showing these IDHW employees violated any statutory or constitutional right. Wolfe only claims one IDHW employee—Henderson—was present with law enforcement when she signed the Safety Plan. But she does not explain how Henderson's presence was unconstitutional. As the Court has explained before, a social worker is entitled to qualified immunity when he or she accompanies law enforcement during removal proceedings and is "[s]imply performing the fundamental aspects of her job." *Ingram v. Mouser*, 2024 WL 249364, at *9.

Second, Wolfe has failed to show a right that was "clearly established." She cites no precedent putting reasonable IDWH employees on notice that performing the essential functions of their job violates constitutional rights. Because no case law makes the alleged unconstitutionality "beyond debate," *al-Kidd*, 563 U.S. at 741, the individual IDHW Defendants are entitled to qualified immunity.

### 4. Shotgun Pleading / Failure to State a Claim

The fundamental problem with Wolfe's Amended Complaint is it is vague. She makes only generalized allegations as to the Defendants' conduct without specifics as to the who, what, where, when, why, and how of the events in question. This broad—or "shotgun"—approach does little to explain how each IDHW Defendant is individually liable for each cause of action. *See, e.g.*, *Tuinstra v. Bonner Cty.*, 2021 WL 2534983, at *3 (D. Idaho June 21, 2021) (concluding that plaintiffs' shotgun style complaint "must be dismissed" because "who each claim is against is not clear"); *Ewing v. Encor Solar, LLC*,

MEMORANDUM DECISION AND ORDER - 12

2019 WL 277386, at \*6 (S.D. Cal. Jan. 22, 2019) ("When suing multiple defendants, plaintiff must differentiate his allegations against each defendant and should not lump defendants together without distinguishing the alleged wrongs amongst defendants"); *F.D.I.C. v. Coleman*, 2015 WL 476234, at \*2 (D. Idaho Feb. 5, 2015) (finding a group pleading argument *did not* apply because "the Complaint sufficiently identifies which Defendants were involved in committing each alleged wrong").

Wolfe has improperly grouped all the Defendants into each cause of action without any explanation as to how each specifically violated her constitutional rights. Because this type of pleading violates Rule 8(a), her Amended Complaint must be dismissed.

Separately, Wolfe's claims also fail to plausibly plead a cause of action against any specific defendant. Because there are myriad reasons for dismissal, the Court will not delve into each claim in great detail. Suffice it to say, Count I (Unlawful Seizure) fails because Wolfe cannot bring a Fourth Amendment claim based on the alleged seizure of her non-party children; Count II (Procedural Due Process) fails because Wolfe waived a pre-deprivation hearing and otherwise received procedural due process; Count III (Substantive Due Process) fails because the IDHW Defendants' alleged conduct does not "shock the conscience"; Count IV (Right to Familial Association) fails because Wolfe voluntarily consented to the removal of her children and the allegedly coercive circumstances of the consent do not raise a reasonable inference of coercion; Count V (Conspiracy) fails because she has failed to allege any of the elements of a conspiracy claim; and Count VI (*Monell*) fails because she has not alleged an unlawful practice or policy.

In short, Wolfe's Amended Complaint fails to adequately identify the specific

MEMORANDUM DECISION AND ORDER - 13

actions any specific Defendant took as applied to a specific cause of action and otherwise fails to state any claims for relief.

### 5. Abstention

Finally, Wolfe's claims are all tied to one or more State court actions related to the custody of her children. Federal court is not the proper place for adjudicating ongoing state court issues, especially those involving domestic relations. As such, the Court abstains from exercising jurisdiction under the "family law" exception and the *Rooker-Feldman* doctrine.[3]

To begin, family law issues—including child custody—are matters of Idaho state law and should be dealt with in that forum. As the Ninth Circuit has noted:

> The strong state interest in domestic relations matters, the superior competence of state courts in settling family disputes because regulation and supervision of domestic relations within their borders is entrusted to the states, and the possibility of incompatible federal and state court decrees in cases of continuing judicial supervision by the state makes federal abstention in these cases appropriate.

*Peterson v. Babbitt*, 708 F.2d 465, 466 (9th Cir. 1983). Furthermore, even where, as here,

---

[3] *Younger* abstention may also apply here. In *Younger v. Harris*, the United States Supreme Court reiterated the importance of comity between state and federal courts and held federal courts generally must abstain from hearing civil rights claims related to pending state court proceedings. 401 U.S. 37 (1971). Abstention is appropriate under *Younger* when: (1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges; and (4) the requested relief seeks to enjoin or has the practical effect of enjoining the ongoing state judicial proceeding. *Page v. King*, 932 F.3d 898, 901-02 (9th Cir. 2019). In *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013), the Supreme Court outlined three types of proceedings which qualify for *Younger* abstention—criminal proceedings, quasi-criminal administrative enforcement proceedings, and civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions (e.g. contempt). In this case, Wolfe's underlying proceedings are civil in nature. The Court has limited access to Idaho's iCourt portal, but it appears as recently as yesterday, the State Court was entering orders. Canyon County Case: CV14-24-11146. Thus, *Younger may* apply here. But the Court does not rely on that doctrine due to its uncertainty about the specific proceedings below.

MEMORANDUM DECISION AND ORDER - 14

a federal constitutional question is presented, "federal courts decline to hear disputes which would deeply involve them in domestic matters." *Thompson v. Thompson*, 798 F.2d 1547, 1558 (9th Cir. 1986) (citation modified); *see also Coats v. Woods*, 819 F.2d 236 (9th Cir. 1987) (declining jurisdiction under the domestic relations exception where a mother's § 1983 claim was premised on her loss of custody).

Second, to the extent any of Wolfe's claims seek review of state court proceedings, the Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine.

The *Rooker–Feldman* doctrine "bars federal courts from exercising subject matter jurisdiction over a proceeding in 'which a party losing in state court' seeks 'what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.' " *Doe v. Mann*, 415 F.3d 1038, 1041 (9th Cir. 2005) (quoting *Johnson v. De Grandy*, 512, U.S. 997, 1005–06 (1994)). The doctrine exists to "prevent litigants from having more than one bite at the apple when they are unhappy with the outcome of their claims" in state court where their correct recourse is an appeal in the state court system. *Van Hook v. Idaho*, 2022 WL 349955, at *3 (D. Idaho Feb. 4, 2022). Thus, to the extent Wolfe seeks review of any state court actions, she may appeal.

In short, two separate legal doctrines lean against the Court exercising jurisdiction.

## V. CONCLUSION

IDWH does not specify whether it seeks dismissal with or without prejudice. As the Court explained above, it will afford Wolfe a final opportunity to amend. Candidly, the Court is of the opinion that multiple *legal barriers*—including abstention—are present

MEMORANDUM DECISION AND ORDER - 15

which make it very unlikely any amendment could save Wolfe's allegations from final dismissal.

Additionally, there does not appear to be factual support for Wolfe's causes of action. Thus, Wolfe is not required to file a Second Amended Complaint; she can simply pursue all available remedies in state court. But to the extent she wishes to proceed in federal court, she should carefully and specifically allege facts that would allow this case to proceed into discovery and clearly outline how the Court has jurisdiction to hear her claims. All briefing must be in compliance with all applicable local rules.

## VI. ORDER

1.  Canyon County's Motion to Dismiss (Dkt. 10) is GRANTED.

2.  IDHW's Motion to Dismiss (Dkt. 11) is GRANTED.

3.  Wolfe is granted leave to file a Second Amended Complaint. If she desires, any such complaint is due within 30 days of the date of this order.

DATED: May 22, 2026

_____
David C. Nye
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 16